UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 23-cr-118-SE-AJ-01 |
| | ) | |
| TYLER ANDERSON | ) | |

**<u>UNITED STATES' OBJECTION TO DEFENDANT'S MOTION TO DISMISS</u>**

The defendant has been indicted for, among other threats, sending violent and aggressive text messages to a U.S. Presidential Candidate's campaign, which included threats to "impale" and "disembowel" that U.S. Presidential Candidate, in violation of Title 18, United States Code, § 875(c). The defendant argues that those messages constitute speech protected by the First Amendment and Count One must be dismissed. The United States responds that the defendant's conduct amounted to "true threats" under 18 U.S.C. 875(c), which bear no First Amendment protection. The government further responds that whether the threats were "true threats" is a question that requires an examination and development of the facts, context, and weight of the evidence and which should be submitted to a jury for determination. The issues presented are not suitable for determination at this stage and the motion should be denied.

**A. <u>Background</u>**

In November and December 2023, the defendant sent multiple threatening text messages to three different phone numbers, each associated with a different U.S. Presidential Campaign. As a result, he was indicted for three counts of sending Interstate Threatening Communications in violation of 18 U.S.C. 875(c). In his instant motion, he challenges his indictment only as to Count One, which resulted from threatening text messages that he sent to Presidential Candidate

#1 (the name used to describe that candidate in the indictment) (hereinafter, "PC1"). The relevant facts with respect to Count One are as follows:

On November 22, 2023, the defendant received a text message inviting him to an upcoming town hall event to be put on by PC1's campaign and to be attended by PC1 in Derry, New Hampshire. The defendant responded directly to the invitation with a text message stating: "[PC1] is a piece of shit and deserves to be impaled with a red-hot metal spike." The defendant then sent an image depicting people being impaled by spikes and added the following message: "^ Kinda like this". He sent additional messages and images, one depicting a disembowelment, accompanied by the message: "^ This disembowelment would work too". The defendant then sent another image of an individual being stabbed in the upper torso, with the comment: "^ This would be perfect, tbh". He then sent another text message stating: "Or [PC1] could die like Mr. Hands by getting fucked by a horse". The defendant concluded with a final text message: "I think I have that video saved somewhere".

After another campaign reported other similarly threatening messages to the police, the defendant was arrested. While in custody, he made various admissions about sending similar messages to other presidential campaigns, and a later forensic review of his phone located the messages to PC1's campaign.

### B. Discussion

The defendant's motion rests on a single claim: that his conduct and actions directed at PC1 did not constitute "true threats." The defendant argues that the text messages he sent to PC1 constitute protected political speech under the First Amendment. But the First Amendment does not protect "true threats" and so "a conviction based on a finding that the statements were true threats would not violate [the defendant's] constitutionally protected right to speech." *United*

*States v. Whiffen*, 121 F.3d 18, 22 (1st Cir. 1997). The question presented then by the instant motion is whether no reasonable jury could find that the communications at issue constitute a "true threat." *See United States v. Clemens*, 738 F.3d 1, 12 (1st Cir. 2013).

"True threats are 'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'" *Counterman v. Colorado*, 600 U.S. 66, 74 (2023) (quoting *Virginia v. Black*, 538 U.S. 343, 359, (2003)). The existence of a threat depends not on the author's actual intention, but on what the statement conveys to the recipient. *Id.*

1. **Whether the Defendant's Messages to PC1 Were True Threats is a Jury Question**

Whether speech constitutes a true threat is a question generally to be decided by a jury. *Clemens*, 738 F.3d at 13. This is particularly true where a defendant attempts to present an alternative non-threatening interpretation of the speech at issue. *See id.* at 13 (whether emails that defendant argued were "generalized fantasy," "sarcastic[]," and "cartoonish and hyperbolic" constituted true threats was best left for the jury); *United States v. Cardozo*, No. 1:18-CR-10251-ADB, 2019 WL 2603096, at *5 (D. Mass. June 24, 2019) (whether a defendant's posting "you will know what it means to be assaulted" and "[y]ou will fucking find out what happens when you cry wolf" online was a true threat should be left to "[a] jury properly instructed"). In fact, "most courts agree" that "whether a communication constitutes a threat or a true threat is a matter to be decided by the trier of fact" because, "in deciding whether a statement constitutes a true threat, we must look closely *both* at the speech's content *and* at its context." *United States v. Dennison*, No. 2:21-CR-00149-JDL-1, 2022 WL 834437, at *2 (D. Me. Mar. 21, 2022) (internal quotations omitted) (emphasis in original).

3

This case is no different. The defendant argues that the context for his messages, namely that it was not clear who was the intended recipient of his messages and that the speech occurred during the presidential primary season, when the defendant was receiving multiple text messages from various campaigns, diminish the likelihood that he intended his messages to be true threats to any person(s). But the fact that the context here remains to be developed and explored at trial is precisely why Count One should be considered by a jury and is not suitable for determination at this stage. *See Clemens*, 738 F.3d at 13 ("Whether a ... [statement] constitutes a threat is an issue of fact for the trial jury, involving assessments of both credibility and of context") (internal quotations omitted); *Whiffen*, 121 F.3d at 22 ("[t]he proper interpretation of [the defendant's] remarks, however, is a question of fact and, therefore, appropriately left for the jury.").

The First Circuit has acknowledged "[t]here may be cases where no reasonable jury could conclude the statements were threats." *Clemens*, 738 F.3d at 13. But to take the question of whether a threat was a true threat from the jury would require an extraordinary case. In fact, the defendant has cited *no cases* within this circuit in which a court dismissed or affirmed the dismissal of a count alleging a "true threat" at the motion to dismiss stage. This is certainly a question best decided—considering all relevant context, evidence and testimony—by a properly instructed jury and need not be determined now.

### 2. Defendant's Messages Could be Found to be True Threats

As explained above, all that the court need decide at this stage is that a jury *could* find that the defendant's speech contained true threats. As the defendant acknowledges, there are myriad cases from this circuit which have either upheld jury determinations of true threats or explained that the determination itself is best left to a jury. The Court should conclude the same for Count One here. The defendant sent messages expressing a desire that violence and brutality

should come to PC1. He sent these directly to a phone number which he knew to be associated with PC1. The text messages express animus, violence, and disturbing material—referring to PC1 by name and including alarming images and language.

Defendant argues that his conduct differs from the speech in certain cases affirming that juries could find true threats where the threatened person was not a political or government figure. *See* Dkt. 15 at 5 (citing *Clemens,* 738 F.3d at 13 n. 11; *Whiffen,* 121 F.3d at 22; *United States v. Fulmer*, 108 F.3d 1486, 1492-93 (1st Cir. 1997). But those cases are simply examples of instances where it was decided that the speech at issue could constitute a true threat. None of the rulings indicate that that outcome in any of those cases would have been different had the target of the threat been a government or political figure.

Defendant argues that his claim is less like these cases and more like *Watts v. United States.*[1] In *Watts*, the Supreme Court ruled that a defendant's statement that "[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J." was not a true threat, where the statement was made at a political rally regarding police brutality, involved the context of the defendant receiving his draft card, and the audience's reaction was laughter. 394 U.S. 705, 706-08 (1969). But here, the context and content of the messages are quite different. Here, the audience was a person or persons on PC1's campaign staff. The context in the present case is an individual sending multiple aggressive and violent messages, containing disturbing language and images directly to the campaign. Whereas the setting and the audience reaction in *Watts* indicated that the alleged threats were not to be taken seriously, the messages in the present case

---

[1] The defendant also compares his conduct to speech described in *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 902 (1982). *Claiborne* involved a case for economic damages resulting from a boycott of white-owned businesses and related activity from many years prior to the decision—a context quite distinct from the instant case—and the speech in *Claiborne* was not subject to the same "true threats" analysis.

were sent electronically and so there was no way for the recipient to gauge the demeanor of the defendant, or whether he meant the threat to be taken seriously. This weighs in favor of a reasonable recipient feeling threatened by the messages.

The present case is better compared to cases within this circuit which have concluded that speech against a political or government figure could constitute true threats. In *United States v. Hardy*, the defendant expressed an intent to kill President Bush and Senator John McCain by "cut[ting] these people's heads off" and "shoot[ing] them." 640 F. Supp. 2d 75, 78 (D. Me. 2009). The court there concluded that those statements, as reported, appeared to "communicate a serious expression" of intent to commit an act of unlawful violence which could not "reasonably be construed as 'political hyperbole.'" *Id.* at 81. In *United States v. Ziobrowski*, the defendant posted on Twitter that he would "literally give $500 to anyone who kills an ICE agent." *United States v. Ziobrowski*, No. CR 18-10250-DJC, 2019 WL 3306802, at *1 (D. Mass. July 23, 2019). There, the court ruled that while the defendant could argue at trial that his post was protected public speech, that was a question for the jury to decide. *Id.* at *3. Similarly, here, even though defendant's speech was directed at a political figure, a reasonable jury could find it to contain "true threats".

Moreover, certain true threats cases have been sent to the jury which involved online posts that which were not directly sent to a specific individual or individuals. *See e.g.*, *Dennison*, 2022 WL 834437 at *1 (whether Twitter post stating "I'm going to kill Jews with my ar15 tomorrow" constituted a true threat was a jury question); *Ziobrowski*, 2019 WL 3306802 at *3 (ruling that jury should decide whether tweet stating that defendant would "literally give $500 to anyone who kills an ICE agent" was a true threat). Here, on the other hand, the defendant's

messages were sent directly to the number that defendant knew to be associated with PC1, which bolsters the threatening nature of the messages.

Defendant also notes that his messages to PC1 did not specifically state that he was going to carry out the violence described in the messages, only that he believed, for instance, that PC1 "deserved to get impaled" and that "disembowelment would work too." Dkt. No. 15 at 7. But the "use of ambiguous language does not preclude a statement from being a threat." *Clemens*, 738 F.3d at 8 (quoting *Fulmer*, 108 F.3d at 1492). And other cases have involved similarly ambiguous language that was found potentially to be a true threat. *See e.g.*, *United States v. Clemens*, No. CRIM.A. 10-10124-DPW, 2011 WL 1540150, at *2–3 (D. Mass. Apr. 22, 2011) (defendant's statement expressed "hopes or wishes but hardly of a benign nature (e.g., 'how I wish a 10–ton I-beam would fall on you ...')"); *Cardozo,* 2019 WL 2603096, at *4 (described *supra*). Here, the defendant's language is violent and aggressive enough that it could reasonably be considered a true threat.

### C. Conclusion

For the reasons stated herein, the Court should deny defendant's motion. Whether his threatening messages were "true threats" is a question best decided by a jury at trial after hearing testimony about the context and content of the communications.

                                                               Respectfully submitted,

Dated:  February 16, 2024

JANE E. YOUNG
UNITED STATES ATTORNEY

By: /s/ Charles L. Rombeau
Charles L. Rombeau
Matthew P. Vicinanzo
Assistant United States Attorneys
53 Pleasant Street, 4th Floor
Concord, NH  03301
(603) 225-1552
charles.rombeau@usdoj.gov
matt.vicinanzo@usdoj.gov