THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| UNITED STATES OF AMERICA | ] | |
|---|---|---|
| | ] | |
| v. | ] | Cr. No. 23-cr-118-SE-AJ-01 |
| | ] | |
| | ] | |
| TYLER ANDERSON | | |

**MOTION TO EXCLUDE EVIDENCE**

Tyler Anderson respectfully moves the Court to exclude from trial the following: (1) evidence relating to his mental condition(s) including statements made by him; (2) testimony or physical evidence of firearms/ammunition found in his roommate's bedroom at the residence in Dover, New Hampshire. This request is made pursuant to Fed. R. Evid. 401, 402, 403.

FACTS[1]

Between July 14, 2022, to December 8, 2023, Tyler Anderson received at least 30 political text messages on his phone. Because PC3 was holding an event in Portsmouth on December 11, 2023, the PC3 campaign sent out text messages notifying voters of this event. Specifically, on December 8th, the PC3 campaign sent a text from #xxx-xxx-1292 ("1292") to #xxx-xxx-8914 ("8914"). Based on the content of the messages received from 8914 - a number the campaign associated with Anderson - PC3 contacted the Portsmouth Police Department and provided the text message sent out to 8914 and the two replies received from that number.

On December 8th into December 9th, agents obtained information from Verizon Wireless to corroborate Anderson's association with 8914, including records that confirmed 8914 sent two messages to 1292 at 10:06am on December 8. Utilizing ping information, the agents also

---

1  These facts are taken from discovery provided by the government.

1

confirmed that Anderson's last known address was within 75 meters of the ping location. With this information, Special Agent Adam Howe applied for a warrant to search Anderson and his home and to seize computers and storage media, including a Samsung Galaxy, and the Court granted this request.

On December 9, 2023, the search warrant was executed at Anderson's home at approximately 2:15pm. Agents found Anderson's phone and had him enter his passcode to unlock it. Special Agent Kendall McBrearty searched through the deleted folder within the phone and found the December 8th text to PC3. During a search of deleted texts, McBrearty located the text messages outlined in Counts One and Two. McBrearty searched other messaging applications on the phone, open internet tabs, an email folder and did not find anything derogatory. Agents searched the bedroom of Anderson's roommate, Levi Strzepek, and found numerous firearms, ammunition, and a gun safe. Through his lawyer, Strzepek confirmed ownership of the firearms.

Anderson was transported to the Dover Police Department, where agents conducted an audio-videotaped interview of him. Anderson confirmed he sent texts to PC3 that were "over the top", that he did so to make the messages stop, and that he had no intent to follow through on the statements he made. Furthermore, when asked about his access to Strzepek's firearms, Anderson explained that he experienced bipolar disorder and depression, that he did not want firearms around, that someone with bipolar and depression should not have access to firearms, and that he was more likely to "blow out his own brains" than anyone else. Prior to executing the search warrant, police and agents were aware that Anderson had a history of suicidal thoughts, including an involuntary emergency admission.

## THE INDICTMENT

On or about December 20, 2023, a grand jury returned a three-count indictment charging Mr. Anderson with Interstate Threatening Communications in violation of 18 U.S.C. § 875(c). Count One alleges that on November 22, 2023, Anderson transmitted a threatening text to Presidential Candidate #1 ("PC1"). Count Two alleges that on December 6, 2023, Anderson transmitted a threatening text to Presidential Candidate #2 ("PC2"). Count Three alleges that on December 8, 2023, Anderson transmitted a threatening text message to Presidential Candidate #3 ("PC3").

## LAW AND ARGUMENT

### I. Motions in Limine

Anderson moves to exclude all evidence relating to his mental condition(s), and the firearms located in Strzepek's room at the residence in Dover, New Hampshire. In summary, the capacity of such evidence to invite unfair prejudice substantially outweighs its probative value. Fed. R. Evid. 401, 402, 403.

### II. Law and Rule 403 Analysis

Relevant evidence "has any tendency to make a fact more or less probable than it would be without the evidence; and . . . is of consequence in determining the action." Fed. R. Evid. 401. Under Rule 402, "[i]rrelevant evidence is not admissible." Relevant evidence may not be admitted if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. "Evidence presents a risk of unfair prejudice when it has 'the capacity ... to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.'" *United States v. Kilmartin*, 944 F.3d 315, 335 (1st Cir. 2019)(quoting *Old Chief v. United States*,

519 U.S. 172, 180 (1997). Unfair prejudice occurs "when particular evidence 'serves only to evoke an improper emotional response' and distracts 'from careful consideration of the relevant issues.'" *Kilmartin*, 944 F.3d at 335(quoting *United States v. Fulmer*, 108 F.3d 1486, 1498 (1st Cir. 1997).

The district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see United States v. Kilmartin*, 944 F.3d at 335 (explaining that while nearly all evidence is offered to prejudice the factfinder, Rule 403 "is meant to stand as a sentinel, which can be alerted to screen out unfair prejudice."). The probative value is informed by the Court's assessment of alternative evidence in the case. *Cf. Old Chief v. United States*, 519 U.S. 172, 184-85 (1997)("[t]he discretionary judgment may be informed not only by assessing an evidentiary item's twin tendencies, but by placing the result of that assessment alongside similar assessments of evidentiary alternatives.").

a. Anderson's Mental Condition(s)

Anderson's mental condition bears little, if any, relevance to the three counts and is unfairly prejudicial. First, courts deliberating over whether to preclude evidence relating to a defendant's mental condition have held that such evidence offers little probative value when the offense requires no more than general intent. *See United States v. Schneider*, 111 F.3d 197, 202-03 (1st Circ. 1997) (affirming district court's decision to preclude expert testimony on defendant's mental condition because the capacity of such evidence to mislead a jury outweighed

4

its limited relevance), *United States v. Ramirez*, 495 Supp.2d 92, 113-14 (D. Mass. 2007) (finding that evidence of defendant's psychological condition was not relevant as to whether government proved general intent), *United States v. Brown*, 326 F.3d 1143, 1147 n.2 (10th Cir. 2003) (observing that "[t]he use of psychological or psychiatric evidence to negate an element of the government's case is limited to offenses requiring proof of a specific intent").

A conviction under 18 U.S.C. § 875(c) requires that the government demonstrate only general intent. *See Counterman v. Colorado*, 600 U.S. 66, 79-80 (2023). Whether Anderson, for example, suffered from depression or suicidal ideation does not make it more or less likely that he knew another person would view his alleged statements as threatening violence. Thus, evidence of Anderson's mental condition offers little, if any, probative value.

The risk of prejudice and jury confusion overwhelmingly outweighs the minimal probative value of evidence relating to Anderson's mental condition. "[C]ertain stigmas attach to any mental illness labeling." *United States v. Brown*, No. 2:12-CR-0097-GMN-VCF, 2018 WL 1903121, 3 (D. Nev. 2018). Evidence of Anderson's mental condition may "evoke an improper emotional response and distract from careful consideration of the relevant issues." *Kilmartin*, 944 F.3d at 335. Furthermore, such evidence may mislead a juror into considering whether a mental condition amounts to temporary insanity or a degree of incapacity. *See Clark v. Arizona*, 548 U.S. 735, 775 (2006) (acknowledging the "potential of mental-disease evidence to mislead jurors…through the power…to suggest that a defendant suffering from a recognized mental disease lacks cognitive, moral, volitional, or other capacity, when that may not be a sound conclusion at all"). In summary, the "controversial character" of some mental conditions invites risks for factfinders. *See Clark*, 548 U.S. at 774. Thus, the court must preclude any evidence

relating to Anderson's mental condition, as its prejudicial value substantially outweighs its probative value. *See Clark v. Arizona*, 548 U.S. at 775 (affirming the exclusion of mental illness evidence where it "may suggest something very significant about a defendant's capacity, when in fact the classification tells us little or nothing about the ability of the defendant to form *mens rea* or to exercise the cognitive, moral, or volitional capacities that define legal sanity").

   b. <u>Firearms</u>

Firearms located at 245 Central Avenue #1, Dover, New Hampshire, deserve exclusion under Rule 403. First, the firearms offer little, if any, probative value regarding any elements of an 18 U.S.C. § 875(c) violation, which prohibits the interstate communication of a threat to injure the person of another with knowledge that another person could view the communication as a threat. Here, the firearms did not belong to Anderson, and he did not possess them. The firearms belonged to his roommate, who rented a room and stored them there. The roommate also secured firearms in a safe inside his room. Because the firearms and ammunition belonged to the renter, who stored them in his rented room, they bear little relevance as to Anderson's state of mind. Furthermore, admitting the multiple firearms invites unfair prejudice. *See United States v. Fulmer*, 108 F.3d 1486, 1498 (1st Cir. 1997) (holding that admitting ammunition allegedly referred to by the defendant's threat invited the risk of prejudice that substantially outweighed any probative value). Such weapons evidence, which bears little relevance to the alleged offenses due to Anderson's lack of access, is highly inflammatory. *See United States v. Erikson*, 794 F.Supp. 273, 275 (N.D. Ill. 1992) (excluding thirty-two weapons seized from defendant's residence pursuant to search warrant, where the weapons had not been identified as being used in any of crimes charged in superseding indictment, as undue prejudice substantially outweighed

relevance). Thus, the court must exclude any evidence relating to the firearms located at 245 Central Avenue #1, Dover, New Hampshire, as their prejudicial nature substantially outweighs their probative value.

Counsel provided the government a draft of this motion, but has not received the government's position as of the filing date.

A hearing is requested.

**WHEREFORE,** Craigue respectfully requests that this Honorable Court preclude the government from introducing:

(a) Evidence of Anderson's mental condition(s);

(b) Evidence of firearms located at 245 Central Avenue #1, Dover, New Hampshire.

Respectfully submitted,

Date: April 8, 2024

*/s/ Dorothy E. Graham*
Dorothy E. Graham
N.H. Bar No. 11292
Assistant Federal Defender
22 Bridge Street, 3rd floor
Concord, NH 03301
Tel. (603) 226-7360
E-mail: Dorothy_Graham@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that the above document was served to the attorneys of record on the following person on April 8, 2024 and in the manner specified herein: electronically served through CM/ECF.

*/s/Dorothy E. Graham*