THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA ]
]
v. ] Cr. No. 23-cr-118-SE-AJ-01
]
]
TYLER ANDERSON

**DEFENDANT'S MEMORANDUM IN OPPOSITION OF THE GOVERNMENT'S REQUEST TO PERMIT REACTION TESTIMONY (ECF #40)**

Tyler Anderson respectfully submits this brief in opposition of the government's request to permit reaction testimony.

<u>The Court Must Preclude Reaction Testimony Because It Is Irrelevant After *Elonis* and *Counterman*</u>

The government contends that reaction testimony is relevant "to whether a reasonable person would understand a statement to be a threat." United States' Motion *in Limine* to Permit Testimony Re Victims' Reaction to Threats (hereafter referred to as ECF #40) at 2 (citing *United States v. Fulmer*, 108 F.3d 1486, 1500 (1st Cir. 1997)). Whether a statement conveys a threat relates to the *mens rea* element of 18 U.S.C. § 875(c) according to the proposed jury instructions filed by both the government and Anderson.[1] However, *Elonis* and *Counterman* firmly establish

---

1 Anderson filed an amended proposal for two instructions – one contemplating a "knowing" mens rea and in the alternative, a reckless mens rea:
Specifically, to convict the defendant, the government must prove each of the following elements beyond a reasonable doubt:
- Mr. Anderson knew or was aware there was a substantial risk that the communication would be interpreted by the recipient as a *true threat* to injure the person of another, and he consciously disregarded this risk.

The government proposed the following instruction, which Anderson opposes, as to the mens rea:
For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
Third: that the defendant consciously disregarded a substantial risk that his communication would be viewed as a *threat* to injure the person of another;

1

that reasonable person's interpretation of Anderson's texts is irrelevant. 575 U.S. 723, 741 (2015) ("Having liability turn on whether a 'reasonable person' regards the communication as a threat—regardless of what the defendant thinks—'reduces culpability on the all-important element of the crime to negligence'…Our holding makes clear that negligence is not sufficient to support a conviction under Section 875(c)"), 600 U.S. 66, 78 (2023) (rejecting true threats charges "turning only on how reasonable observers would construe [the defendant's] statement"). Accordingly, *Elonis* and *Counterman* preclude the reaction testimony that *Fulmer* would have allowed as "state-of-mind evidence…relevant to what a reasonable person in the position of the speaker should have foreseen." 108 F.3d 1486, 1500 (1997).

The question is instead whether Anderson knew that the recipient would interpret his texts as threats but "deliver[ed] them anyway." *Counterman*, 600 U.S. at 79. A recipient's reaction neither makes the fact of Anderson's awareness (or lack thereof) more or less probable, nor is of any consequence in this 875(c) action. *See* Fed. R. Evid. 401. Accordingly, the testimony is irrelevant and inadmissible under Rule 402.[2]

To support the assertion that reaction testimony should come in, the government relies on *Fulmer*, *Whiffen*, *Walker*, and *Towery*. See ECF 40 at 2-3. But these decisions do not provide the authority the government seeks. Twice citing the district court's jury instructions in *Whiffen*, the

---

2 In support of reaction testimony, the government quotes *dicta* in *Counterman*, that "a statement can count as such a threat based solely on its objective content."600 U.S. 66, 72 (2023). This language is *Counterman*'s only reference to the potential relevance of objective circumstances, such as a recipient's reaction. *Counterman* goes no further; there is no discussion as to whether witnesses may testify about their reaction to the alleged threat(s). *See id*. If anything, *Counterman's* rationale, and the result it reaches, cautions against such testimony. See id. at 82 ("The State had to show only that a reasonable person would understand the defendant's statements as threats. It did not have to show any awareness on the defendant's part that the statements could be understood that way. For the reasons stated, that is a violation of the First Amendment").

2

government defines a "threat" as a "serious statement expressing an intent to injure another person, which under the circumstances would cause apprehension in a reasonable person, as distinguished from a political statement, mere idle or careless talk, exaggeration, or something said in a joking manner." *Id*. (citing 121 F.3d 18, 23 (1st Cir. 1997)). The government wrongly relies upon *Whiffen* to support its contention that testimony, regarding the reaction of a witness who read the text exchange between the political campaign and Anderson, is admissible as relevant to how a reasonable person would construe Anderson's texts.

As discussed *supra*, the reasonable person's reaction to Anderson's texts is irrelevant. Furthermore, *Whiffen* contemplated these jury instructions, and the definition of "threat" within them, because the defendant there claimed error in that the instructions failed to meet the requirements of *Fulmer*, which provided that "the appropriate standard under which a defendant may be convicted for making a threat is whether he should have reasonably foreseen that the statement he uttered would be taken as a threat by those to whom it is made." *Whiffen*, 121 F.3d at 23. *Whiffen* determined that these instructions, which the government here invokes, failed because they exclusively focused on whether the recipient of the threat would feel apprehension. *See id*. at 23-24. *Whiffen* affirmed the conviction resulting from those instructions only because the incorrect instructions could not have affected the verdict in light of those specific facts. *See id*. at 24 ("The facts of this case are such that the instructions required under *Fulmer* and the instructions actually given in this case are functionally equivalent").

However, *Whiffen* explained that these flawed instructions may require reversal in other cases, where, "as in *Fulmer*, there may be information known to the listener, but not to the speaker (or vice versa), that would cause a reasonable listener to perceive a statement as an

3

expression of an intent to injure despite the fact that a reasonable speaker would not view it as such." *Id*. at 24. *Whiffen* indicates that reaction testimony is inadmissible in such contexts. *See id.* The allegations against Anderson resemble what *Whiffen* anticipated. Anderson believed his texts went to an automated process and did not know a person might receive them. *Whiffen*'s rationale against reaction testimony more strongly attaches here than in the case it anticipated, where information was known to the listener but not to the speaker. Here, the alleged speaker did not even know a listener existed. Accordingly, *Whiffen* stands against the proposition that the government advances.

A hearing is requested.

Respectfully submitted,

Date: April 12, 2024

*/s/ Dorothy E. Graham*
Dorothy E. Graham
N.H. Bar No. 11292
Assistant Federal Defender
22 Bridge Street, 3rd floor
Concord, NH 03301
Tel. (603) 226-7360
E-mail: Dorothy_Graham@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that the above document was served to the attorneys of record on the following person on April 12, 2024 and in the manner specified herein: electronically served through CM/ECF.

*/s/Dorothy E. Graham*